# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 22-0483V

ABBY VAUGHN,

               Petitioner,

v.

SECRETARY OF HEALTH AND
HUMAN SERVICES,

               Respondent.

Chief Special Master Corcoran

Filed: February 27, 2024

*Paul R. Brazil, Muller Brazil, LLP, Dresher, PA, for Petitioner.*

*Tyler King, U.S. Department of Justice, Washington, DC, for Respondent.*

## DECISION AWARDING DAMAGES[1]

On April 29, 2022, Abby Vaughn filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered Guillain-Barré syndrome ("GBS"), a defined Table injury, after receiving an influenza ("flu") vaccine on October 5, 2019. Petition at 1 ¶¶ 1, 12. The case was assigned to the Special Processing Unit ("SPU") of the Office of Special Masters. After Respondent conceded entitlement, the parties were unable to resolve damages on their own,[3] so I ordered briefing on the matter.

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

[3] Four and one-half months after Petitioner was determined to be entitled to compensation, the parties informed me that they had reached an impasse in their damages discussions and requested that I set a briefing schedule. Status Report, filed April 10, 2023, ECF No. 25.

For the reasons set forth below, I find that Petitioner is entitled $165,000.00 for her past pain and suffering. The parties have agreed Petitioner also is entitled to $736.27 for satisfaction of the Medicaid lien in this case.

## I.    Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs*., No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Hum. Servs*., No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Hum. Servs*., No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D*., 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Hum. Servs*., 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with my predecessor Chief Special Masters) adjudicating similar claims.[4] *Hodges v. Sec'y of*

---

[4] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases, including the majority of GBS claims, were assigned to former Chief Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

*Health & Hum. Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

## II.    The Parties' Arguments

The parties agree that Petitioner is entitled to $736.27 to satisfy the Medicaid lien for payments made on her behalf for treatment of her GBS illness. Respondent's Brief on Damages ("Res. Brief"), filed May 25, 2023, at 1, 1 n.1, ECF No. 26. Thus, the only area of dispute is regarding the appropriate pain and suffering award.

Emphasizing her lengthy hospitalization and inpatient rehabilitation, effect on her high school attendance, and nearly two years of residual effects, Petitioner requests $170,000.00. Petitioner's Brief in Support of Damages ("Pet. Brief"), filed May 25, 2023, at 1, 11-12, ECF No. 27. Contrasting her circumstances with those experienced by petitioners in *W.B., Robinson, Gross,* and *Gruba*[5] – cases involving past pain and suffering awards ranging from $155,000.00 to $165,000.00 - Petitioner insists her award should be greater. Pet. Brief at 11. Instead, she maintains her case is similar to *Dillenbeck* and *T.M.*[6] – cases involving awards of $170,000.00 and $180,000.00, respectively, and petitioners with "more significant physical symptoms and a need for extended treatment that affected their mental health and enjoyment of life." *Id.*

Respondent counters that Petitioner should be awarded only $110,000.00, for her past pain and suffering. Res. Brief at 1, 13-14. To support his position, he asserts that "[P]etitioner's clinical course [wa]s less severe than those in previous flu/GBS cases where damages were decided by the Court. *Id.* at 26 (citing *Shankar* and *Dillenbeck*[7]).

---

[5] *W.B. v. Sec'y of Health & Hum. Servs.,* No. 18-1634V, 2020 WL 5509686 (Fed. Cl. Spec. Mstr. Aug. 7, 2020) (awarding $155,000.00 for actual pain and suffering); *Robinson v. Sec'y of Health & Hum. Servs.,* No. 18-0088V, 2020 WL 5820967 (Fed. Cl. Spec. Mstr. Aug. 27, 2020) (awarding $160,000.00 for actual pain and suffering); *Gross v. Sec'y of Health & Hum. Servs.,* No. 19-0835V, 2021 WL 2666685 (Fed. Cl. Spec. Mstr. Mar. 11, 2021), *review denied,* 154 Fed. Cl. 109 (2021) (awarding $160,000.00 for actual pain and suffering); *Gruba v. Sec'y of Health & Hum. Servs.,* No. 19-1157V, 2021 WL 1925630 (Fed. Cl. Spec. Mstr. Apr. 13, 2021) (awarding $165,000.00 for actual pain and suffering).

[6] *Dillenbeck v. Sec'y of Health & Hum. Servs.,* No. 17-0428V, 2019 WL 4072069 (Fed. Cl. Spec. Mstr. July 29, 2019) (a decision I issued awarding $170,000.00 for past pain and suffering and $10,857.15, the net present value of payments of $5,000.00 per year for 22 years); *T.M.  v. Sec'y of Health & Hum. Servs.,* No. 19-0119V, 2023 WL 355358 (Fed. Cl. Spec. Mstr. Dec. 19, 2022 and reissued on Jan. 23, 2023 in redacted form) (damages ruling indicating an award of $180,000.00 for actual pain and suffering was appropriate). The reasoning for the amount of the *T.M.* award as set forth in the damages ruling was then incorporated into a damages decision awarding the appropriate amount. *See T.M.  v. Sec'y of Health & Hum. Servs.,* No. 19-0119V, 2023 WL 1958568 (Fed. Cl. Spec. Mstr. Jan. 17, 2023 and reissued Feb. 13, 2023) (awarding $180,000.00 for actual pain and suffering).

[7] *Shankar v. Sec'y of Health & Hum. Servs.,* No. 18-1382V, 2022 WL 2196407 (Fed. Cl. Spec. Mstr. May 5, 2022) (awarding $135,000.00 for actual pain and suffering); *Dillenbeck v. Sec'y of Health & Hum. Servs.,*

Specifically, Respondent emphasizes the five-year period that the *Shankar* petitioner continued to experience residual symptoms. Res. Brief at 11.

Regarding the duration of Petitioner's symptoms, Respondent contends "there is no evidence of [P]etitioner suffering from resulting sequelae last[ing] past July 17, 2020." Res. Brief at 13 (citing Exhibit 2 at 2838 (noting Petitioner could discontinue her Gabapentin). He argues that Petitioner's neurologist opined that the intermittent thigh and right fingertip numbness she experienced in March 2021 "was secondary to meralgia paresthetica[8] (not her previous episode of GBS), and recommended that ongoing weight loss would be beneficial." Res. Brief at 13 (citing Exhibit 2 at 2907).

In his responsive brief,[9] Respondent further disputes Petitioner's assertion that *Robinson* and *Dillenbeck* are comparable cases. Respondent's Response to Pet. Brief ("Res. Response"). For example, he contrasts the *Robinson* petitioner's circumstances – involving an episode of positional tachycardia[10] raising concerns for a pulmonary embolism,[11] and her status as a 41-year-old working mother with Petitioner's status as a 16-year-old high school student who was still able to graduate on time. *Id.* at 2.

### III.   Appropriate Compensation for Petitioner's Pain and Suffering

In this case, awareness of the injury is not disputed. Although not yet an adult, the record reflects that at all times Petitioner was a competent teenager with no impairments that would impact her awareness of her GBS injury. Therefore, I analyze principally the severity and duration of Petitioner's injury.

In performing this analysis, I have reviewed the record as a whole, including the medical records, affidavits, and all assertions made by the parties in written documents. I considered prior awards for pain and suffering in both SPU and non-SPU GBS cases

No. 17-0428V, 2019 WL 4072069 (Fed. Cl. Spec. Mstr. July 29, 2019) (a decision I issued awarding $170,000.00 for past pain and suffering and $10,857.15, the net present value of payments of $5,000.00 per year for 22 years).

[8] Meralgia paresthetica is "a type of entrapment neuropathy caused by the entrapment of the lateral femoral cutaneous nerve at the inguinal ligament, causing paresthesia, pain, and numbness in the outer surface of the thigh in the region supplied by the nerve." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY ("DORLAND'S ") at 1136 (32nd ed. 2012).

[9] Petitioner did not file a reply reacting to Respondent's brief.

[10] Tachycardia is an "excessive rapidity in the action of the heart." DORLAND'S at 1867.

[11] An embolism is "the sudden blocking of an artery by a clot or foreign material which has been brought to its site of lodgment by the blood current." DORLAND'S at 606.  A pulmonary embolism is "the closure of the pulmonary artery or one of its branches by an embolism."  *Id.*

and rely upon my experience adjudicating these cases.[12] However, I ultimately base my determination on the circumstances of this case.

The evidence shows that Petitioner – age 16 when vaccinated - suffered a moderate GBS illness involving several trips and calls to her primary care provider ("PCP") and the emergency room ("ER"), before being diagnosed with a less common variation of GBS involving acute motor and sensory neuropathy (known as AMSAN).[13] During her hospitalization, Petitioner was transferred to the pediatric intensive care unit ("PICU") due to a concern that she may develop breathing issues. Exhibit 2 at 683. Petitioner received five days of IVIG treatment, with good improvement after receiving an increased dosage (adjusted to account for her additional weight) during the last two days. *Id.* at 703. She continued to receive Gabapentin and various pain medication for her headaches. *Id.* at 703-04.

Following her hospitalization, from November 9 through 21, 2019, Petitioner was transferred to an inpatient rehabilitation facility for thirteen additional days of treatment. Exhibit 2 at 703-708; 1793-97. During this time, Petitioner continued to experience severe headaches, could ambulate with a walker, and was able to go to the bathroom unassisted. *Id.* at 1793. After her discharge on December 3, 2019, Petitioner used a cane while at home and a walker in crowded public settings, such when at school. *Id.* at 1824, 2759. Petitioner was authorized to return to school on December 9, 2019, although it was recommended that she do so for only half days. *Id.* at 1798, 1824-26.

---

[12] Statistical data for all GBS cases resolved in SPU by proffered amounts from inception through January 1, 2024 reveals the median amount awarded to be $171,133.72. The awards in these cases - totaling 364, have typically ranged from $128,645.56 to $256,835.75, representing cases between the first and third quartiles and awards comprised of all categories of compensation – including lost wages. 47 cases include the creation of an annuity to provide for future expenses.

Past pain and suffering amounts awarded in substantive decisions issued in 34 SPU GBS cases range from $92,500.00 to $192,500.00, with an additional case involving annuity payments. The median amount past pain and suffering award in these 35 cases was $165,000.00, with awards falling within the first and third quartiles ranging from $155,000.00 to $180,000.00.

[13] Petitioner first visited the ER on November 1, 2019, complaining of a worsening headache, currently at a pain level of ten out of ten, and toe numbness for two to three days. Exhibit 3 at 405. Diagnosed with a migraine or tension headache, she was administered pain medication intravenously ("IV"). *Id.* at 407. Three days later, Petitioner visited her PCP due to a return of her headache and worsening numbness, now in her legs, hands, and fingers. Exhibit 2 at 2728. At her second ER visit on November 5, 2019, Petitioner again received IV pain medications. Exhibit 3 at 370. Three days before a scheduled MRI, Petitioner's mother telephoned her PCP, alerting them to Petitioner's worsening symptoms of numbness in her legs, arms, face, and tongue and difficulties walking. Exhibit 2 at 2736. She was instructed to take Petitioner to the ER. *Id.* Admitted to the hospital that same day, GBS was considered as a possible diagnosis on November 10, 2019. Exhibit 2 at 620, 623. After further testing a diagnosis of GBS (specifically AMSAN) was confirmed and IVIG treatment was initiated. Exhibit 2 at 680-684; *see also* 42 C.F.R. § 100.3(c)(15) (2017) (additional Qualifications and Aids to Interpretation for GBS).

5

When seen for a physical therapy ("PT") evaluation on December 10, 2019, Petitioner reported that she continued to experience headaches, was taking Gabapentin, and was concerned after falling due to ongoing balance issues. Exhibit 2 at 2750-51. Additionally, based upon several factors, including her recent GBS illness, Petitioner was hospitalized for passive suicidal thoughts and depression on January 10, 2020. Exhibit 4 at 3. She received inpatient treatment through January 13, 2020. *Id.* at 7. At her ninth and final PT session on January 21, 2020, Petitioner reported no headache pain, some continued numbness and tingling in her hands, but a desire to return to work, which was approved. *Id.* at 2816. And, at an appointment in July 2020, her neurologist opined that Petitioner showed "excellent improvement in her cranial nerve and motor deficits," but observed that she had required hospitalization for depression and her obesity appeared to be worsening. Exhibit 2 at 2838. He recommended that Petitioner wean herself off Gabapentin. *Id.*

Because many of the symptoms Petitioner experienced during 2020 and 2021 may have been due, in part, to unrelated conditions, it is difficult to assess the exact duration of Petitioner's GBS illness. For example, Petitioner's pediatric ophthalmologist opined that the blurriness she was experiencing in February 2020, was due to "uncorrected myopia and a small angle exophoria noted on today's examination," rather than her GBS illness. Exhibit 2 at 2825. And, in March 2021, Petitioner's neurologist opined that numbness Petitioner was experiencing in her right thigh was likely secondary to meralgia paresthetica and connected to Petitioner's morbid obesity. *Id.* at 2907.  Thus, even though she may have continued to suffer some mild residual symptoms thereafter, Petitioner's symptoms were greatly improved by the early to mid-2020.

Petitioner's initial pain and suffering was no doubt heightened by the unusual symptoms she experienced, and her treating physician's inability to quickly diagnosis her illness. However, her residual symptoms were mild and often can be attributed to unrelated conditions. Therefore, the more severe cases proposed by Petitioner, which involved Petitioner's who continued to struggle with significant residual symptoms do not constitute good comparable cases. *See Dillenbeck,* 2019 WL 4072069, at *2-4 (describing continued residual effects which the special master found impacted her ability to do her job); *T.M.,* 2023 WL 355358, at *17 (noting ongoing symptoms). However, Petitioner's initial phase was clearly more troubling that some of the cases cited by Petitioner as warranting lesser awards. *See,* e.g., *W.B.*, 2020 WL 5509686, at *1-2; *Gross,* 2021 WL 2666685, at *4. Thus, I agree that Petitioner's award should be greater than that awarded in cases such as *W.B.* and *Gross.*

*Robinson* offers the most helpful comparable case. Although the *Robinson* petitioner's hospitalization was further complicated by difficulties performing a lumbar puncture, a move to the intensive care unit, and possible episode of tachycardia, raising

the possibility of a pulmonary embolism, it was only six days in duration. *Robinson,* 2020 WL 5820967, at *2. And the *Robinson* petitioner did not require inpatient rehabilitation, but was able to rely, instead, on outpatient physical therapy. *Id.* at *2-3. Furthermore, I do not find Respondent's contention - that the *Robinson* petitioner's circumstances as a 41-year-old mother equates to greater pain and suffering, to be persuasive. Both the *Robinson* petitioner and the Petitioner in this case encountered difficulties related to their individual circumstances. Ms. Vaughn's young age and desire to fully participate in her high school years not doubt caused her sadness and frustration.

As I have explained previously at expedited "Motions Day" hearings, GBS pain and suffering awards generally should be higher than those awarded to SIRVA claimants, and statistical data for past awards supports that premise. *See supra* note 6. Thus, Petitioner's pain and suffering award should be greater than the $110,000.00 proposed by Respondent. Weighing all of the above, I deem an amount slightly lower than that proposed by Petitioner ($170,000.00), but slightly greater than the amount awarded in *Robinson* ($160,000.00) to be a fair and reasonable past pain and suffering award.

## Conclusion

For all of the reasons discussed above and based on consideration of the record as a whole, **I find that $165,000.00 represents a fair and appropriate amount of compensation for Petitioner's past/actual pain and suffering.**[14] And, as agreed upon by the parties, **there is a Medicaid lien in this case of $736.27.**

**I therefore award Petitioner a lump sum payment of $165,736.27, as follows:**

1. **A lump sum payment of $165,000.00, representing compensation for actual pain and suffering, in the form of a check payable to Petitioner; and**

2. **A lump sum payment of $736.27, representing reimbursement of a Medicaid lien for services rendered to Petitioner by the State of Wisconsin, in the form of a check payable jointly to Petitioner and Wisconsin Casualty Recovery, and mailed to:**

Wisconsin Casualty Recovery
5615 High Point Drive, Suite 100
Irving, TX 75038-9984.

---

[14] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* Section 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

Petitioner agrees to endorse the check to Wisconsin Casualty Recovery for satisfaction of the Medicaid lien. This amount represents compensation for all items of damages that would be available under Section 15(a). *Id.*

The Clerk of the Court is directed to enter judgment in accordance with this Decision.[15]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[15] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.